UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LACEY K.,[1] | ) |
| | ) No. 22 CV 954 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) November 14, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Lacey K. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting she is disabled by severe degenerative disc disease of the lumbar spine status-post fusion, polyarthritis, inflammatory bowel disease/ulcerative colitis, bipolar disorder, borderline personality disorder, substance abuse disorder (in remission), and post-concussion syndrome. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Lacey's remand request is granted:

**Procedural History**

Lacey filed applications for DIB and SSI in November 2016, alleging disability onset as of December 9, 2015. (Administrative Record ("A.R.") 31.) Her applications were denied initially and upon reconsideration at the administrative level. (Id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Lacey's first name and last initial in this opinion to protect her privacy to the extent possible.

1

103-20, 123-54.) Lacey then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 177-91.) Lacey appeared with her attorney at a November 2018 hearing, during which Lacey and a vocational expert ("VE") testified. (Id. at 51-102.) The ALJ issued her decision in February 2019, ruling that Lacey is not disabled ("2019 Decision"), (id. at 28-43), and the Appeals Council denied Lacey's request for review, (id. at 1-4). Lacey then sought judicial review before this court in 2020. (Id. at 2071-73.) In response, the government agreed to voluntarily remand the case for further review. *Lacey K. v. Saul*, 20 CV 1132, Dkt. Nos. 24, 26 (N.D. Ill. March 4, 2021); (A.R. 2101-08).

The Appeals Council sent the case back to the ALJ noting that the ALJ's decision "d[id] not contain adequate evaluation of the severity of [Lacey's] mental impairments" because "the findings do not appear to be based on the consideration of all relevant evidence" and that "[r]eassessment of the RFC is also warranted." (A.R. 2111-12.) In particular, the Appeals Council remarked that the ALJ "gave great weight to the opinion of consulting psychiatrist Piyush Buch, M.D." but "did not mention Dr. Buch's observations that [Lacey] had a history of multiple suicide attempts by overdose or cutting herself; had over ten psychiatric hospitalizations; was crying throughout the interview; exhibited depressed affect; had poor eye contact; was withdrawn; and reported cutting herself as a way of relieving tension." (Id. at 2111.) The Appeals Council explained that these observations "conflict with the finding that [Lacey's] mental impairments are not severe." (Id.) Lacey then appeared with her attorney at a telephonic hearing before the same ALJ in August 2021 and

2

she and a VE testified. (Id. at 2000-40.) Thereafter, the ALJ again concluded that Lacey is not disabled ("2021 Decision"). (Id. at 1967-99.) Lacey again seeks judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 21).

## Analysis

Lacey argues that the ALJ failed to "offer any cogent explanation for the gaps and inconsistencies" in her step-two analysis and "leapt improperly" from finding that Lacey's mental impairments were not severe to "an unsupportable RFC assessment." (R. 12, Pl.'s Mem. at 7-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Under this standard, the court finds that remand is warranted here.

3

A. **Mental Impairments**

Lacey argues that the ALJ erred at step two by failing to "base her finding that [Lacey's] mental impairments were 'non-severe' on all relevant evidence." (R. 12, Pl.'s Mem. at 8.) Under 20 C.F.R. § 404.1520(c), "severe" means a significant limitation that interferes with a claimant's ability to work. But courts construe "severe" to mean only more than "slight." *See, e.g.*, *Colson v. Colvin*, 120 F. Supp. 3d 778, 788 (N.D. Ill. 2015) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). An impairment is therefore not severe if it is "a slight abnormality having only a minimal effect on a person's ability to perform the full range of work-related activities." *Chapman v. Barnhart*, 189 F. Supp. 2d 795, 804 (N.D. Ill. 2002).

The government argues that step two is merely a *de minimis* evaluation and because the ALJ found other impairments to be severe, there was no error. (R. 14, Govt.'s Opp. at 4 ("[I]t is immaterial which impairments or how many impairments an ALJ designates as 'severe'" because step two merely allows the Commissioner "to deny benefits summarily to those applicants with impairments which could never present a person from working." (citing Social Security Regulation 85-28 and *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012))).) Lacey agrees but points out that the ALJ "failed to consider how [Lacey's] mental impairment[s], combined with multiple severe physical impairments, impact her ability to [sustain employment]." (R. 12, Pl.'s Mem. at 11.) In short, Lacey argues that the ALJ failed to address all the evidence when evaluating her mental impairments.

4

As a threshold matter, Lacey contends that the ALJ failed to follow the Appeals Council's instructions on remand because she did not consider the 2017 opinion of Dr. Buch, the psychiatric consultative examiner ("CE"). (R. 12, Pl.'s Mem. at 8-13 ("In the first decision, the ALJ mischaracterized [the CE's] report. In the decision upon remand, evading the AC's directives, she went further and ignored it entirely.").) But 42 U.S.C. § 405(g) authorizes judicial review only of the Commissioner's final decision, not internal agency proceedings. *Poyck v. Astrue*, 414 Fed. Appx. 859, 860 (7th Cir. 2011). The court therefore considers only whether the ALJ's evaluation of Lacey's mental limitations on remand was supported by substantial evidence. *Id.*; *Barnes v. Astrue*, No. 11 CV 4040, 2012 WL 3150372, at *7 (C.D. Ill. Aug. 1, 2012) ("Putting aside the question of whether [the claimant] correctly characterizes the Appeals Council's instructions, compliance with the order is an internal agency matter and not a final decision of the agency.").

The 2019 Decision afforded "great weight" to the CE's opinion and cited to it for the proposition that Lacey has "good abstract thinking and judgment," (A.R. 41 (citing id. at 990 (2017 consultative exam))), and that she was able to "handle[] the stress of the interview fairly," (id.; but see id. (CE noting that Lacey's "affect was depressed throughout the examination," as exemplified by "poor eye contact" and "crying throughout the interview")). By contrast, the 2021 Decision cites to CE's opinion only briefly and fails to mention how the ALJ assessed the opinion. (Id. at 1975 (stating only that "the claimant denied any history of substance use") (citing id. at 990).) Neither Decision mentions that Lacey has repeatedly attempted suicide or

5

that she has been hospitalized over 10 times for psychiatric symptoms. (Id. at 989 (CE noting Lacey "has a history of multiple suicide attempts by overdose or cutting herself" with a "history of over 10 psychiatric hospitalizations at various hospitals").) Further, the 2021 Decision provides no explanation for why the ALJ no longer finds the CE's opinion to be of "great weight." (See id. at 41 (ALJ affording the CE's opinion "great weight" in 2019 Decision because it is consistent with Lacey's "benign mental status examinations").) Pursuant to 20 C.F.R. § 404.1527, the ALJ is required to evaluate every medical opinion, including those from federal or state psychological consultants. And while an ALJ is not required to adopt such an opinion, she must still consider the weight to afford it because "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." *Id.* § 404.1513a(b)(1).

Lacey further argues that the ALJ erred by "neglect[ing] to mention dire findings, instead focusing solely on 'unremarkable' mental status findings from physical examinations" and that she improperly relied upon an absence of mental health treatment or compliance and equated her part-time work with an ability to sustain full-time employment. (R. 12, Pl.'s Mot. at 10-11.) The court agrees. In finding Lacey's mental impairments to be non-severe, the ALJ noted that Lacey "has a history of heroin use with multiple admissions for symptoms of depression and suicidal ideation when intoxicated and/or under the influence of drugs." (A.R. 1974.) The ALJ continued that while Lacey was diagnosed with depression and bipolar disorder, she was noncompliant with mental health medication and refused to see a

6

psychiatrist or psychologist "although [her] neurologist noted there was a strong likely correlation with her symptoms." (Id. at 1974-75 (citing id. at 3447 (July 2021 neurology visit for EMG noting "[s]evere depressed bipolar I disorder with psychotic features" and "[m]ajor depressive disorder")).) Notably, the ALJ stated that there is "very little documentation of any issues with mental health other than the substance abuse in 2014, 2015, and 2016" and "no signs of significant anxiety or depression." (Id. at 1975 (citing id. at 2543-2715 (physical therapy notes)).) It is unclear why the ALJ would expect there to be mental health notes included within Lacey's physical therapy records.

The court is troubled by the ALJ's failure to mention Lacey's psychiatric hospitalizations and her conclusion that there are "no signs of significant anxiety or depression." (See id. at 1975.) The record evidence demonstrates that Lacey experienced multiple hospitalizations for psychiatric-related concerns, including suicide attempts, self-harm from cutting herself with a razor blade or knife, overdose attempts with various drugs and alcohol, depression, and suicidal ideation. (Id. at 615-19 (March 2015 hospitalization because of overdose attempt and "Acetaminophen poisoning"), 563-64 (March-April 2015 hospitalization because of attempting suicide by overdosing on Norco and cutting her throat with a knife), 504 (December 2015 hospitalization for thoughts of overdosing on alcohol or pain medication), 490 (July-August 2016 hospitalization because of cutting left forearm and left thigh with razor blade and thoughts of overdosing and self-harm), 661-63 (July 2016 hospitalization because of cutting left forearm), 592 (August 2016 hospitalization because of cutting

7

left wrist), 528 (August 2016 hospitalization because of "self-injurious behavior" including lacerations in multiple locations), 548-50 (September 2016 hospitalization because of cutting herself with a razor blade and describing it as a "release"), 581 (September 2016 hospitalization because of cutting herself with a razor blade).)

Indeed, the ALJ characterized Lacey's hospital admissions as relating to mental health symptoms "when intoxicated and/or under the influence of drugs," and appeared to dismiss the psychiatric hospitalizations because there was "no documentation of substance abuse treatment" or "references in the record after October 2016 to any substance abuse." (See id. at 1974.) The ALJ's reasoning gives the court pause because while she relies on Lacey's substance use to downplay the psychiatric hospitalizations, she then finds Lacey's substance abuse disorder to be non-severe. (Id. at 1974-75 (citing id. at 990 (CE noting that Lacey self-reported that she has no "history of substance abuse")).) The ALJ cannot have it both ways. Where Lacey alleges medically determinable mental impairments of substance abuse disorder, bipolar disorder, and borderline personality disorder, the ALJ may not rely solely on Lacey's substance abuse disorder to ignore her other psychiatric impairments. To be sure, and as Lacey points out, none of her hospitalizations were for substance abuse alone. (R. 12, Pl.'s Mem. at 9.) The ALJ therefore improperly disregarded evidence of Lacey's mental impairments. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citations omitted) (ALJ "may not ignore entire lines of contrary evidence").

8

The ALJ also focused on Lacey's lack of mental health treatment. (A.R. 1974 (citing id. at 528 (discharge notes from August 2016 psychiatric hospitalization noting Lacey "was advised to seek [psychiatric] rehabilitation but refused")), 1975 ("At the time of the November 28, 2018 hearing, the claimant was not on any medications for mental health," she "refused to see a psychiatrist or psychologist and did not want to take any medications, although the neurologist noted there was a strong likely correlation with her symptoms," there was "no documented treatment for any mental health issue," and medical evidence showed "a lack of mental health treatment.").) However, Lacey explained her reasons for not pursuing mental health treatment— fear of becoming suicidal, (id.; see also id. at 2015 (when asked why she does not seek mental health treatment, Lacey testified, "[b]ecause when I did, and I trusted it, they were giving me medication" and "I ended up swallowing all the pills, [and] ended up in a psych ward").) The ALJ neither addresses Lacey's reasoning for non-compliance with mental health treatment, nor considers any alternative explanations, instead concluding that Lacey's non-compliance signifies the absence of mental health limitations. *See Voight v. Colvin*, 781 F.3d 871, 877 (7th Cir. 2014) (improper for ALJ to discount claimant's back pain because of failure to take narcotic-based pain medication or undergo intensive treatment); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference.").

9

Finally, the court is concerned that the ALJ may have equated Lacey's part-time work with an ability to work full time and used this inference to minimize her mental impairments. (See A.R. 1975.) Immediately before finding Lacey's mental impairments to be non-severe, the ALJ noted that Lacey "is now working part-time at a gaming room as a cashier/hostess where she interacts with public regularly" and cited to Lacey being able to order an Uber ride to travel to and from work as evidence of her ability to pay attention and concentrate. (Id.) But the ability to perform part-time employment does not necessarily support a conclusion that a claimant can perform full-time work. *See Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018) ("This court has instructed ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment."); *Voigt*, 781 F.3d at 876-77 ("A disabled person may want to work, may seek work, and in some cases may land work."). This is especially true here, given that Lacey reported needing to leave work early and making mistakes because of her inability to concentrate. (A.R. 1975 (citing id. at 2000-40 (hearing transcript))); *see also Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) ("[E]ven persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." (emphasis in original)). Simply put, the court cannot conclude that the ALJ's analysis "say[s] enough to enable a review of whether the ALJ considered" the combined effect of Lacey's mental impairments and limitations on her ability to work. *See Lothridge*, 984 F.3d at 1233. For this reason, remand is warranted.

**B.     RFC**

Lacey also argues that the ALJ "committed reversible error when she again failed to accommodate any of Plaintiff's documented deficits in mental functioning in the RFC assessment." (R. 12, Pl.'s Mem. at 13-15.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, in developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling"). Where the ALJ does not rely upon medical opinions, she must "thoroughly discuss[] the medical and other evidence," considering each of the claimant's "impairments and related function deficits," *Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020), and "describ[e] how the evidence supports each [RFC] conclusion," *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). An ALJ's RFC analysis must "say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and must provide a "logical bridge" between the evidence and the conclusions, *Butler*, 4 F.4th at 501. In this case, the ALJ concluded that Lacey can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with certain limitations.

11

(A.R. 1978.) However, the ALJ concluded that no limitations were warranted to address her mental impairments. Given the errors the court identifies here regarding Lacey's mental deficits, a new RFC assessment may be warranted on remand. When reassessing the RFC, the ALJ should sufficiently articulate why she incorporated, or excluded, limitations arising from Lacey's medically determinable mental impairments. *Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023) (finding that ALJs "must rest [their] denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade").

## Conclusion

For the foregoing reasons, Lacey's remand request is granted, and the matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**